### RUBLE v. RUBLE et al. (No. 85.)

(Court of Civil Appeals of Texas. Waco. June 26, 1924. Rehearing Denied Oct. 16, 1924.)

**1. Homestead ⬳ 141 (1) — Right of surviving wife to use and occupy homestead includes right to receive rents and enjoy revenues thereof.**

The right of the surviving wife to use and occupy the homestead includes the right to receive and enjoy the rents and revenues thereof, notwithstanding the homestead was the separate property of the husband, and the legal title thereto upon his death passed by descent or devise to others.

**2. Wills ⬳ 564 (1) — Income accruing and collected during six months after testator's death held bequeathed to widow; "vacate;" "premises;" "homestead."**

Under a will giving wife six months "to vacate the premises of our homestead," income from cultivation of the land by tenants or croppers for the year in which testator died, which accrued and was collected during the six months, held bequeathed to the widow; "vacate" meaning to make vacant, empty, leave, especially to surrender possession by removal, to cease from occupancy; "premises" meaning a distinct portion of real estate, land, or lands, land with its appurtenances as buildings, a piece of real estate, a building and its adjuncts; and "homestead," in the popular sense, and as used, meaning the farm on which a farmer resides and uses for homestead purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Homestead; Premises; Vacancy—Vacant—Vacate.]

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Suit by W. G. Ruble and others against Mrs. J. G. Ruble. From the judgment rendered, defendant appeals. Reversed and rendered.

Street & Coston, of Waco, for appellant.

Spivey, Bartlett & Carter, of Marlin, for appellees.

GALLAGHER, C. J. This suit was instituted by W. G. Ruble, R. E. Ruble, Mrs. Jessie Ruble Angier, joined by her husband, A. P. Angier, Merlen Ruble, Jack Ruble, and Tennie Lee Ruble, all of whom are appellees herein, against Mrs. J. G. (Rosa Lee) Ruble, appellant herein, to construe a paragraph of the will of J. G. Ruble, deceased. Appellant and appellees are all legatees and devisees under said willʻ and the only legatees and devisees thereunder. Appellees W. G. Ruble, R. E. Ruble, and Mrs. Angier are children of J. G. Ruble, and his first wife. Appellees Merlen Ruble, Jack Ruble, and Tennie Lee Ruble are children of W. G. Ruble and his first wife, who died prior to the execution of the will under consideration. Said first wife of J. G. Ruble died intestate many years ago. The date of his marriage to appellant is not shown. There are no children of said second marriage. During his first marriage J. G. Ruble acquired 300 acres of land, and the same was community property of said marriage. There was never any partition of said land between said J. G. Ruble and the children of his first wife. He continued to live upon the same as a homestead until his death, which occurred on May 23, 1923. He left a will, dated April 19, 1920, in which he disposed of the whole 300 acres of land as if the same were his separate property. By the terms of said will he divided said 300 acres of land into three tracts of 100 acres each. He devised one of said tracts to R. E. Ruble and one to Mrs. Angier. He devised one-half of the remaining 100-acre tract to W. G. Ruble and the other half to said children of W. G. Ruble by his first wife. He devised to appellant certain lots in the city of Waco, all the household and kitchen furniture in the house, all live stock owned at the time of his death, and all cash on hand or in banks. He devised all the remainder of his property to his said three children and appellant, share and share alike. Whether there was any such remaining property at the death of said testator does not appear.

Said 300 acres of land were practically all in cultivation, the crops thereon being cultivated at the time of the testator's death by his tenants, some of whom were ordinary third and fourth tenants, renting portions of said land for the year 1923 on the basis of one-third of the grain and one-fourth of the cotton and cotton seed raised by them to be paid as rents. Others were ordinary tenants on halves, that is, working portions of the land with teams and tools supplied by the

testator under an agreement that the crops raised by them should be divided equally between themselves and testator.

In devising said tract of land to his said children and grandchildren the testator described it as "my present (date of this will) homestead tract, the said homestead tract being about 300 acres on the S. W. Jordan Survey." The devise of a part of said land to the children of the first wife of W. G. Ruble contains the following:

"It being understood that my son, W. G. Ruble, is to have proceeds of rents of said land should he become in possession of same before his children become of age, and when they become of age said land shall be conveyed to them without encumbrance or charge for their maintenance."

Said will was duly probated, and the testator's said three children named therein as independent executors duly qualified as such.

The deceased had been in bad health for a long time prior to his death, and it seems that appellant actually transacted his business affairs. There was an addendum to the will, which the trial court found was apparently made at the time of its execution, and which reads as follows:

"My wife, Rosa Lee Ruble, will pay out of her portion of the estate all obligations she make from this date, including doctors' bills and funeral expenses."

The trial court found that some time. prior to his death, and while he was sick, the testator made a statement, in connection with the discussion of crop conditions, that he was glad that crop prospects were good, as expenses would be heavy and his wife would need the same. The court further found that there was no evidence that the testator at the time he made said remark expected death to come to him before the 1923 crops were gathered. The trial court further found that there was little, if anything, aside from the language of the will itself that threw any light upon the question at issue in this case.

At the testator's death none of the crops growing on said homestead tract had been gathered, harvested, or marketed. All of the same were gathered, harvested, and marketed within six months after the death of the testator and his interest therein under said contracts aforesaid converted into money. A contention arose between appellant and appellees as to whether she or appellees were entitled to receive the money so arising from said rental contracts, and, pending termination of this litigation, such money was by agreement of all parties placed in the hands of one H. A. Patton, to be held in trust and delivered to such party or parties as the court may direct in the final judgment in this cause. The ownership of said moneys depends upon the proper construction of the will of the testator, and more particularly that paragraph of the same tendered for con-

struction by appellees in their petition in this cause, which reads as follows:

"It is my will and desire that my wife, Rosa Lee Ruble, shall have six months after my death to vacate the premises of our homestead, and no action shall be taken against her during the first six months in order to force or coerce her to vacate."

The trial court held that said moneys so arising from the testator's interest in said contracts with said tenants, under the terms of said paragraph of said will, belonged to appellees, and entered judgment accordingly. Appellant has brought the case to this court for review on appeal.

Appellant contends that she was by said paragraph of said will permitted to occupy for the space of six months the homestead of the testator as it existed at his death and long prior thereto, without reference to whether possession of such lands was held by the testator at the time of his death in person or by tenants cultivating crops thereon, and that such right of occupancy entitled her to all rents and revenues arising and becoming payable during such time. Appellees contend that such right of occupancy was limited to the house and outbuildings on the farm and such land appurtenant thereto as was in the personal and exclusive possession of the testator at the time of his death, and did not include any lands then in possession of tenants or croppers for the purpose of cultivating crops thereon; and that appellant was therefore not entitled to rents and revenues arising and becoming payable during such time on the land so cultivated by tenants, but that the right to such rents and revenues passed to appellees with the legal title to said land.

The proper construction of said paragraph of the testator's will should be determined from the language used therein, read in the light of similar expressions in other parts of the will, giving the words used their usual and ordinary. meaning. Appellant was, by the terms of said paragraph, to have six months after the death of the testator "to vacate the premises of our homestead." The Standard Dictionary defines the word "vacate" as follows: "To make vacant; empty; leave; especially to surrender possession by removal." The word is defined in 39 Cyc. p. 1104, as follows: "To leave empty; to cease from occupancy." In People v. Clough, 16 Colo. App. 120, 63 Pac. 1066, 1069, the court declares that to vacate premises, in the ordinary signification of the word, means only to surrender the actual possession. The Standard Dictionary defines the word "premises" as being "a distinct portion of real estate; land or lands; land with its appurtenances, as buildings." 31 Cyc. p. 1163, thus defines "premises": "A piece of real estate; a building and its adjuncts."

[1, 2] The testator, in a preceding paragraph of his will, declared that his home-

stead tract consisted of 300 acres of land. Evidently he there used the word "homestead" in its popular sense, and not with reference to the limitation to 200 acres imposed by the exemption statutes or with reference to any defect in his title to any part of the tract. In a popular sense the homestead of a farmer living in the country consists of the farm on which he resides, and which he uses for homestead purposes. Iken v. Olenick, 42 Tex. 195, 201; Hopkins v. Grimes, 14 Iowa, 73, 77; Oliver v. Snowden, 18 Fla. 823, 43 Am. Rep. 338; Keyes v. Cyrus, 100 Cal. 322, 34 Pac. 722, 38 Am. St. Rep. 296. We think the testator used the term "homestead" in the paragraph of his will before us for construction in the same sense in which he used said term in the preceding paragraph above referred to. Notwithstanding such tract of land was community property of his former marriage, he seems to have held and treated it as his separate property during his lifetime, and to have disposed of it as such by said will at his death. Having treated said entire tract as his homestead in said will, the testator saw fit to permit his surviving wife to continue to occupy same for a period of six months after his death, and to limit her right to such occupancy to such period of time. Until she was required by the terms of said will, under which she elected to take, or, by necessary implication from the provisions contained therein, to vacate said premises and to surrender the possession thereof she held and occupied the same as her homestead. The right of the surviving wife to use and occupy the homestead includes the right to receive and enjoy the rents and revenues thereof, notwithstanding such homestead was the separate property of the husband and the legal title thereto immediately upon his death passed by descent or devise to others. McAllister v. Godbold (Tex. Civ. App.) 29 S. W. 417, 418, and authorities there cited.

This construction of the paragraph of said will under consideration harmonizes the same with the former paragraph thereof, which provides that W. G. Ruble shall have the rents of the land devised to his minor children, should he come into possession of such land before they become of age. It is also in harmony with the declaration of the testator that appellant would need good crops that year to meet her obligations. It is also in harmony with that rule of law which favors that construction of a doubtful provision in a will which most nearly conforms to the disposition made by general law of the property involved. Darragh v. Barmore (Tex. Com. App.) 242 S. W. 714, 718. It is also in harmony with a large number of adjudicated cases awarding crops grown, matured, and severed during actual occupancy of land to such occupant. 12 Cyc. 977; Mercil v. Brouillette, 66 Minn. 416, 69 N. W. 218; Churchill

v. Ackerman, 22 Wash. 227, 60 Pac. 406, 408; Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; Lynch v. Sprague Roller Mills, 51 Wash. 535, 99 Pac. 578.

While the findings of fact in this case call all the parties cultivating crops on said homestead by the general name of tenants, the further facts found constitute all those working said lands on the halves merely croppers or joint owners of the crops with the testator. The bequest of all the testator's live stock to appellant was without qualification or restraint as to the time such bequest was to take effect. Such live stock, or a part thereof, were being used by said tenants on the halves in cultivating their crops, and such use was doubtless continued until said crops were gathered and marketed. At least nothing to the contrary is made to appear. Appellant, therefore, to this extent, contributed to the production, gathering, and marketing of such crops after the death of her said husband.

We have concluded that the court erred in construing the paragraph of said will here under consideration, and that the same should be construed to mean that the income from the cultivation of said land for the year 1923, whether arising out of rents or out of an interest in such crops, having accrued and having been collected during the six months after the death of the testator, is the property of and belongs to the appellant, Mrs. J. G. Ruble.

The judgment of the trial court is here reversed and so rendered.

SPIVEY, J., took no part in the decision of this case.